COMMUNITY FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. 72500.

Supreme Court of Missouri, En Banc.

Oct. 16, 1990.

John S. Pletz, Jefferson City, for Community Federal Sav. & Loan Ass'n.

William L. Webster, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., George Cox, Sp. Asst. Atty. Gen., Jefferson City, for Director of Revenue.

David J. Kornelius, Jennifer A. Davis, Kansas City, for amicus curiae Great Southern S & L.

ROBERTSON, Judge.

In this case we decide whether intangible taxes paid under a statute later declared unconstitutional are refundable under Section 143.781, RSMo 1986, the state income tax statute. The Director of Revenue (Director) denied the claim of appellant, Community Federal Savings and Loan (Community), for a refund. The Administrative Hearing Commission (Commission) upheld the decision of the Director. This case involves the construction of the revenue laws of the state. We have jurisdiction. Mo. Const. art. V, §§ 3 and 18. Section 621.189, RSMo 1986. Affirmed.

## I.

*Jefferson Savings & Loan Association v. Goldberg,* 626 S.W.2d 640 (Mo. banc 1982), declared the intangible personal property tax imposed on holders of accounts in savings and loan associations by Section 148.480, RSMo 1978, unconstitutional. Community sought refunds from the Director of the intangible tax it had paid during the years 1975 through 1981 under Section 136.035, RSMo 1986. The Director refused to make the refunds and advised Community that if its refund claims were successful, it would then be liable for income tax for the years in question. However, the Director informed Community that if it would drop its refund claims there would be no income tax liability for the period.

Eschewing the Director's proposed bargain, and subsequent to his denial of its tax refund requests, Community appealed to the Commission. The Commission denied Community's Section 136.035 claim for refund; this Court upheld that decision in *Community Federal Savings & Loan Association v. Director of Revenue,* 752 S.W.2d 794 (Mo. banc), *cert. denied,* 488 U.S. 893, 109 S.Ct. 231, 102 L.Ed.2d 221 (1988) (*Community Federal I*). Although *Community Federal I* held that other savings and loans in that case were eligible for refunds of intangible taxes under Section 136.035, the Court affirmed the denial of Community's refund because Community had failed to file its appeal to the Commission in a timely manner. *Id.* at 799.

Prior to the decision in *Community Federal I,* Community filed Missouri income

tax returns, claiming the amount it had paid as the intangible personal property tax as a payment toward its income tax liability. Community had zero income tax liability for the tax years in question. Thus, Community claimed its overpayment of intangible tax—amounting to $7,178,120.00—as overpayments of income tax.

With the decision in *Community Federal I*, Community sought to revive its appeal from the Director's prior denial of its request for an income tax refund. On January 30, 1990, the Commission determined that the Director had properly denied appellant's claim for refund of overpayments of Missouri income tax. This petition for review followed.

## II.

### A.

This Court will affirm the decision of the Commission when that decision is "authorized by law and supported by competent and substantial evidence upon the whole record," unless the result is "clearly contrary ... to the reasonable expectations of the general assembly at the time such authority was delegated to the agency." Section 621.193, RSMo 1986. The facts are not in dispute; we review the Commission's decision for its adherence to the law.

■ Community seeks to recover its refund from the state; yet, "the state is entitled to invoke its sovereign immunity unless it expressly consents not to do so." *Community Federal I*, 752 S.W.2d at 796. A statute allowing refunds of moneys paid as taxation constitutes a limited waiver of sovereign immunity. A statute waving sovereign immunity is to be strictly construed. *Id.* at 797. "[I]n the absence of statutory authority, taxes voluntarily, although erroneously paid, albeit under an unconstitutional statute, cannot be refunded." *Id.* Further, when construing statutes,

> the court's primary responsibility is to ascertain the intent of the General As-

sembly from the language used and to give effect to that intent. *Brown Group, Inc. v. Administrative Hearing Commission*, 649 S.W.2d 874 (Mo. banc 1983). In determining legislative intent, the court must first consider the language of the statute and words employed in their plain and ordinary meaning. *State ex rel. D.M. v. Hoester*, 681 S.W.2d 449 (Mo. banc 1984). Provisions of the entire legislative act must be construed together and if reasonably possible all provisions must be harmonized. *Collins v. Director of Revenue*, 691 S.W.2d 246 (Mo. banc 1985).

*Community Federal I*, 752 S.W.2d at 798.

### B.

■ Against this backdrop of statutory construction, we turn to consider Community's arguments concerning its claim for refund. Community cites Section 143.781, RSMo 1986, as authority for its claimed refund. Section 143.781 reads, in part, as follows:

> 1. The director of revenue within the appropriate period of limitations may credit an overpayment of income tax and interest on such overpayment against any liability in respect of any tax imposed by the tax laws of this state on the person who made the overpayment, and the balance shall be refunded....

> 2. If the amount allowable as a credit for the tax withheld from the taxpayer exceeds his tax to which the credit relates, the excess shall be considered an overpayment.

Subsection 1 authorizes the Director to apply a taxpayer's overpayment of *income taxes* to offset any other state tax liability, with the balance to be returned to the taxpayer. Community's primary contention—in light of our current knowledge that the intangible tax is constitutionally void—is that Community's intangible tax payments should now be recognized as income tax payments. This argument proceeds from the premise that the General

Assembly designed the intangible tax as a tax in lieu of the income tax; upon the demise of the intangible tax, Community reasons that the intangible tax is no longer in lieu of but effectively the same as the income tax. Community's rationale thus leads it to conclude both that subsection 1 applies in this case and that Subsection 2 directs the Department of Revenue to refund Community's intangible tax payments.

Despite the creativity of Community's argument, we must reject the point. By its unequivocal terms, Section 143.781 applies only to income tax overpayments. There is no language in the statute suggesting that Section 143.781 is anything other than a specialized statute dealing with *income tax* overpayments. In the face of the legislature's clear language, this Court may not legitimately extend the reach of Section 143.781 to payments of intangible personal property taxes.

At the time it paid this tax, Community was not without remedy. Section 136.035, the general refund statute, expressly provided for refunds of the intangible personal property tax when a proper claim for refund was made within two years of the date of the payment. Although Community initially attempted to follow Section 136.035, it failed to appeal the Director's refusal of its claim for refund to the Commission within the thirty days permitted by Section 161.273, RSMo (now Section 621.050, RSMo 1986). *Community Federal I* held that this failure to pursue the appeal destroyed Community's Section 136.035 claim for refund. Having lost its Section 136.035 claim for refund, the government's limited waiver of sovereign immunity—and its grace—expired.

## C.

■ Community strongly urges the significance of the Director's offer to drop the issue of Community's income tax liability if Community would forego its initial claim for a refund under the general refund stat-ute. Community contends that this offer amounts to the recognition that the overpayments were income tax payments from the beginning. Whether the intangible tax overpayments might have been used to affect income tax *liability* is not before us, as appellant had no income tax liability to offset. In any event, the Director's proposal did not and could not affect the terms of the statute or the character of the original payments.

## D.

■ Community also makes an equitable argument for a refund. The argument is appealing. Yet to utter "tax" and "equity" in the same sentence is to speak in contradictory terms. As this, and other courts have repeatedly said, "[t]he refund of taxes illegally enacted is ordinarily a matter of governmental grace." *Community Federal I*, 752 S.W.2d at 797. In the absence of a statutory expression of that grace, and in the face of the government's entitlement to presume the constitutionality of its taxing statutes and to plan its budgets accordingly, "taxes voluntarily paid without compulsion, although levied under an unconstitutional statute, cannot be refunded without the aid of a statutory remedy." *Id.* The point must be denied.

## III.

There being no statutory provision permitting the refund sought by Community here, the decision of the Administrative Hearing Commission is affirmed.

All concur.